# IN THE SUPREME COURT OF IOWA

No. 17–1149

Filed March 8, 2019

**AMES 2304, LLC,**

Appellant,

vs.

**CITY OF AMES, ZONING BOARD OF ADJUSTMENT,**

Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Story County, Michael J. Moon, Judge.

The City of Ames's Zoning Board of Adjustment seeks further review of a court of appeals decision sustaining Ames 2304's writ of certiorari regarding the legality of the Board's denial of Ames 2304's permit for a proposed interior remodel. **WRIT SUSTAINED.**

Debra Hulett of Nyemaster Goode, P.C., Des Moines, for appellant.

Eric M. Updegraff, Brent L. Hinders, and Hugh J. Cain of Hopkins & Huebner, P.C., Des Moines, for appellee.

**CHRISTENSEN, Justice.**

Ames 2304, LLC (Ames 2304) filed a petition for writ of certiorari after the City of Ames's Zoning Board of Adjustment (ZBA) denied Ames 2304's permit for an interior remodel of a nonconforming use residential structure. The proposed remodel would increase the number of bedrooms while maintaining the same number of apartment dwelling units, and the ZBA determined the zoning ordinance prohibited this increase in bedrooms because it would increase the intensity of the nonconforming use. The district court annulled the writ, and the court of appeals reversed the district court ruling on appeal. The ZBA sought further review.

On our review, we conclude the zoning ordinance defines an "increase in intensity" as an increase in the number of dwelling units. Consequently, the ZBA erred in denying Ames 2304's interior remodeling permit because the remodel would not increase the number of dwelling units in the structure. Therefore, we affirm the court of appeals' decision, reverse the judgment of the district court, and remand to the district court for entry of an order sustaining the writ of certiorari.

## I. Background Facts and Proceedings.

Ames 2304 owns the property located at 2304 Knapp Street in Ames, Iowa. The property was originally built as a single-family structure in 1910, and it was converted to its current four one-bedroom apartment units in 1928. Two apartment units occupy each floor in the two-story home. The property is zoned low density residential according to the City of Ames (the City) Municipal Code, which permits only single-family detached residential dwellings with one dwelling per lot. However, the property was grandfathered in as a legal nonconforming use and has been operating as one since the four-unit apartments were established prior to the City's current zoning ordinance.

In April 2016, Ames 2304 sought a building permit to remodel the property's interior.[1] Under the proposal, the first floor would transform from two one-bedroom units into one studio unit and one two-bedroom unit. Additionally, Ames 2304 would convert the two one-bedroom units on the second floor into one studio unit and one three-bedroom unit. In total, Ames 2304 seeks to increase the number of bedrooms from four to seven while maintaining the same number of apartments after the remodel.[2] A zoning enforcement officer for the City's ZBA denied Ames 2304's building permit on April 19, noting the proposed remodel was not permitted because the increase in the number of bedrooms constituted a prohibited increase in the intensity of the nonconforming use. The zoning enforcement officer informed Ames 2304 that the permit for the proposed remodel could not "be issued until the remodel reduces the number of bedrooms for the property to not exceed the allowed four units and four total bedrooms for the site."

Ames 2304 filed a timely appeal to the ZBA. The ZBA held a hearing on June 22 and affirmed the zoning enforcement officer's decision to deny the permit by a vote of three to one. In its written decision, the ZBA noted that "the addition of bedrooms has been in the past and is still considered to be an intensification of such use." Additionally, it concluded the change in the number of bedrooms in the units "intensifies the site requirements

---

[1]The City's Municipal Code states,

> No Building/Zoning Permit shall be issued by the Building Official for any building, building addition, structure, or structural alteration, and no building or structure shall be erected, added to, or structurally altered, and no change of use shall be permitted or established unless and until the Zoning Enforcement Officer certifies that such building structure or use is in conformity with this Ordinance or is a valid nonconforming use.

Ames, Iowa, Municipal Code § 29.1501(1)(a) (2017).

[2]The City noted throughout the proceedings that it considers studio units to have one bedroom.

for the property requiring that additional parking be provided." The ZBA determined the City's zoning ordinance "does not allow increases in intensity for non-conforming structures undergoing internal remodeling."

Ames 2304 filed a petition for writ of certiorari on August 23. The district court conducted a trial on June 14, 2017, in which Ames 2304 presented two arguments in support of its request for the district court to reverse the ZBA's decision. First, Ames 2304 argued the ZBA improperly interpreted section 29.307(2)(a)(ii) of the City of Ames Municipal Code. Second, Ames 2304 claimed the facts failed to support the ZBA's finding that the proposed remodel would increase the intensity of the property's nonconforming use. The district court rejected these arguments and annulled the writ of certiorari.

Ames 2304 filed a notice of appeal to our court on July 14, and we transferred the case to the court of appeals. On appeal, Ames 2304 argued (1) the ZBA acted illegally in denying Ames 2304's permit for the proposed interior remodel and (2) substantial evidence did not support the ZBA's determination that the proposed interior remodel would increase the intensity. The court of appeals concluded the intensity of the property's use is tied to the number of dwelling units. Thus, since Ames 2304 is not increasing the number of dwelling units in the property, the court of appeals determined the proposed remodel does not violate the City's prohibition against an increase in the intensity of the nonconforming use. Based on this interpretation of the City's Municipal Code, the court of appeals also concluded the ZBA's findings were not supported by substantial evidence and the ZBA acted illegally in denying Ames 2304's permit for the proposed remodel. The ZBA sought further review, which we granted.

## II. Standard of Review.

We "review an original certiorari action for the correction of errors at law." *Vance v. Iowa Dist. Ct.*, 907 N.W.2d 473, 476 (Iowa 2018). A party may present a certiorari action "when authorized by a statute or when an 'inferior tribunal, board, or officer' exceeded its jurisdiction or otherwise acted illegally in executing judicial functions." *Bowman v. City of Des Moines Mun. Hous. Agency*, 805 N.W.2d 790, 796 (Iowa 2011) (quoting Iowa R. Civ. P. 1.1401). "An inferior tribunal commits an illegality if the decision violates a statute, is not supported by substantial evidence, or is unreasonable, arbitrary, or capricious." *Id.* "Evidence is considered substantial when reasonable minds could accept it as adequate to reach a conclusion." *Vance*, 907 N.W.2d at 476 (quoting *State v. Garrity*, 765 N.W.2d 592, 595 (Iowa 2009)). We are bound by the findings in the record if there is substantial evidence to support the inferior tribunal's decision. *Bowman*, 805 N.W.2d at 796. Finally, "we give deference to the board of adjustment's interpretation of its city's zoning ordinances," but the "final construction and interpretation of zoning ordinances is a question of law for us to decide." *Lauridsen v. Okoboji Bd. of Adjustment*, 554 N.W.2d 541, 543 (Iowa 1996).

## III. Analysis.

The ZBA maintains the district court correctly determined the ZBA acted legally and had substantial evidence to support its findings of fact. However, before we can address the merits of the zoning challenge, we must first address the ZBA's error preservation claim. The ZBA argues Ames 2304 failed to preserve error for our court's review on its claim that the prohibition on increases in intensity does not apply to residential properties under the City ordinance's definition of "intensity" because it never raised this claim before the ZBA or district court.

**A. Error Preservation.** According to the ZBA, Ames 2304 only partially preserved error on its claim that the ZBA acted illegally. The ZBA concedes Ames 2304 preserved error on its argument that the ZBA improperly interpreted City of Ames Municipal Code section 29.307(2)(a)(ii) as permissive rather than mandatory. However, the ZBA contends Ames 2304 failed to preserve error on its argument that the City ordinance's definition of "intensity" does not apply to residential use because Ames 2304 never raised it until Ames 2304 appealed the district court decision. The court of appeals concluded Ames 2304 preserved error on all of its arguments, noting Ames 2304 was merely providing an additional theory of statutory interpretation on appeal when it raised its claim regarding the definition of "intensity" instead of advancing a new argument altogether. We agree that Ames 2304 preserved error.

The parties have consistently disputed the interpretation of the City's Municipal Code in their argument over whether an increase in bedrooms is an increase in the intensity of a nonconforming use under the City's Municipal Code. Ames 2304 has maintained the Municipal Code's language governing increases in intensity was inapplicable to its remodeling permit request and no increase in intensity would occur under its proposed remodel. Before the district court, Ames 2304 stated its "proposed interior remodeling does not increase the intensity of any nonconforming use." The district court concluded that "[t]he Ames ZBA correctly interpreted the requirements of Section 29.307(2)(a) as prohibiting an increase in the intensity of a nonconformity through a remodeling project." On appeal, Ames 2304 continues to declare that "[t]he proposed interior-remodeling plan was not an increase in intensity."

While it is true Ames 2304 did not specifically refer to the definition of "intensity" under the Municipal Code before the district court, the issue

of whether the increase in bedrooms constitutes an increase in intensity of a nonconforming use under the Municipal Code was briefed by both sides and raised before the ZBA. *See State v. Christensen*, No. 09–1457, 2010 WL 5276884, at *2 (Iowa Dec. 17, 2010) (per curiam) ("That a party fails to cite the specific statute or rule in support of an issue at the district court level is not dispositive of whether the issue has been preserved for appeal."). Ames 2304's reliance on the Municipal Code's definition of "intensity" on appeal is simply "additional ammunition for the same argument [it] made below—not a new argument advanced on appeal." *JBS Swift & Co. v. Ochoa*, 888 N.W.2d 887, 893 (Iowa 2016). In concluding that Ames 2304 preserved error, it is also important to note this case turns on statutory interpretation. Our court must consider a statute or ordinance "in its entirety [and] not just [through] isolated words or phrases." *State v. Romer*, 832 N.W.2d 169, 176 (Iowa 2013) (quoting *In re Estate of Bockwoldt*, 814 N.W.2d 215, 223 (Iowa 2012)). Since this case turns on our interpretation of the City's Municipal Code, we must properly consider the Code as a whole—including other references to the term "intensity" in the City's zoning chapter of the Code. For these reasons, we hold Ames 2304 properly preserved error on all of its arguments.

**B. The Scope of the Challenged Ordinance.** The parties agree the property at issue has been operating as a legal nonconforming use, but they dispute whether Ames 2304's proposed interior remodel is a prohibited increase in the intensity of the property's nonconforming use. A nonconforming use is a use "that lawfully existed prior to the time a zoning ordinance was enacted or changed, and continues after the enactment of the ordinance even though the use fails to comply with the restrictions of the ordinance." *City of Des Moines v. Ogden*, 909 N.W.2d 417, 423 (Iowa 2018) (quoting *City of Okoboji v. Okoboji Barz, Inc.*, 746

N.W.2d 56, 60 (Iowa 2008)). Since a nonconforming use was lawfully in existence at the time a zoning ordinance was enacted or changed, there is "a vested right in the continuation of the nonconforming use once the ordinance takes effect unless the nonconforming use is legally abandoned, enlarged, or extended." *Id.* at 423–24.

These limitations on the nonconforming use of property are expressed within the City of Ames Municipal Code, which states in relevant part,

> Any use of any structure or lot that was conforming or validly nonconforming and otherwise lawful at the enactment date of this ordinance and is nonconforming under the provisions of this Ordinance or that shall be made nonconforming by a subsequent amendment, may be continued so long as it remains otherwise lawful, subject to the standards and limitations of this Section.
>
> (a)  Movement, Alteration and Enlargement.
>
> (i)  Enlargement.
>
> a.  A nonconforming use may not be increased in intensity and may not be enlarged, expanded or extended to occupy parts of another structure or portions of a lot that it did not occupy on the effective date of this Ordinance, unless the enlargement, expansion or extension complies with all requirements for the zone, does not create an additional nonconformity, and is approved for a Special Use Permit by the Zoning Board of Adjustment, pursuant to the procedures of Section 29.1503, excluding 29.1503(4)(b)(vii) of the Review Criteria General Standards, except as described in subsection b. following.
>
> b.  Any building or structure containing a nonconforming use may be enlarged up to 125% of the floor area existing on the effective date of this ordinance, provided that the expanded building or structure complies with all density, coverage and spatial requirements of the zone in which it is located.
>
> c.  The enlargement of a nonconforming use that has the effect of making a structure nonconforming, other than as described in subsection b. above, shall not be specially permitted pursuant to Section 29.1503, but rather

shall be construed as a request for a variance, subject to the procedures of Section 29.1504.

(ii) Exterior or Interior Remodeling or Improvements to Structure. Exterior or interior remodeling or improvements to a structure containing a nonconforming use shall be permitted, provided that any proposed enlargement, expansion or extension shall be subject to the provisions set forth in the above paragraph.

Ames, Iowa, Municipal Code § 29.307(2)(a) (2012). The ZBA claims subsection (ii) governing "Exterior or Interior Remodeling or Improvements to Structure" incorporated subsection (i)'s prohibition on increases in intensity of the nonconforming use, so "the ordinance does not allow increases in intensity for nonconforming structures undergoing internal remodeling." Based on this interpretation, the ZBA argues it was appropriate to deny Ames 2304's remodeling permit because an increase from four to seven bedrooms and the additional parking required due to the increase in bedrooms constitutes a prohibited increase in intensity of the nonconforming use.

We apply our general rules of statutory construction to interpret an ambiguous ordinance. *City of Okoboji v. Okoboji Barz, Inc.*, 717 N.W.2d 310, 314 (Iowa 2006). An ordinance is ambiguous "if reasonable persons can disagree" on its meaning. *Id.* "An ambiguity may arise from the meaning of particular words or from the general scope and meaning of a statute in its totality." *Id.* In this case, the ZBA concedes section 29.307(2) is ambiguous, and we agree given the conflicting rulings in this case. Thus, we must apply our general rules of statutory construction. *Id.*

Our goal in interpreting a statute is to determine legislative intent. *Id.* In doing so, we examine the words the legislature chose in the ordinance rather than pondering what the legislature "should or might have said." *Id.* (quoting *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004)). Unless the ordinance defines a word or uses a word with

an established legal meaning, we give the words in the ordinance their "ordinary and common meaning by considering the context within which they are used." *Id.* (quoting *Auen*, 679 N.W.2d at 590). We also consider the ordinance in its entirety to give it its "natural and intended meaning." *Id.*

To determine whether Ames 2304's proposed increase in the number of bedrooms constitutes a prohibited increase in the intensity of the nonconforming use, we first must determine whether section 29.307(2)(a)(i), which governs the enlargement of a nonconforming use, applies to the interior remodeling discussed in section 29.307(2)(a)(ii) of the Municipal Code. The relevant portion of section 29.307(2)(a)(i) states, "A nonconforming use *may not be increased in intensity* and may not be enlarged, expanded, or extended to occupy parts of another structure or portions of a lot that it did not occupy." Ames, Iowa, Municipal Code § 29.307(2)(a)(i)(a) (emphasis added). Section 29.307(2)(a)(ii) provides in relevant part, "interior remodeling or improvements to a structure containing a nonconforming use shall be permitted, provided that any proposed enlargement, expansion or extension shall be subject to the provisions set forth in the above paragraph." *Id.* § 29.307(2)(a)(ii). Thus, Ames 2304 contends, the City must permit Ames 2304's interior remodeling permit because the remodel does not change the structure's size. This proposed interpretation appears to focus solely on the first part of section 29.307(2)(a)(ii) and ignores the restrictions after the word "provided." Nevertheless, this proposed interpretation is nonsensical when read in the greater context of the City's zoning code.

As the district court noted, under this interpretation, Ames 2304 "could remodel the existing structure to add 50 occupants and the Ames ZBA could not prevent such a remodeling as long as the building's interior

dimensions did not change." This result contravenes the City's purpose of its ordinance governing nonconformities, which states,

> It is the general policy of the City to allow uses, structures, and lots that came into existence legally, in conformance with then-applicable requirements, to continue to exist and be put to productive use, but to mitigate adverse impact on conforming uses in the vicinity. This Section establishes regulations governing uses, structures and lots that were lawfully established but that do not conform to one or more existing requirements of this Ordinance. The regulations of this Section are intended to:
>
> (i) Recognize the interests of property owners in continuing to use the property;
>
> (ii) Promote reuse and rehabilitation of existing buildings; and
>
> (iii) Place reasonable limits on the expansion of nonconformities that have the potential to adversely affect surrounding properties and the community as a whole.

*Id.* § 29.307(1)(a). In light of the City's purpose to reasonably limit property owners from expanding nonconformities that could potentially adversely impact the surrounding area and greater community, we cannot imagine the City intended to give property owners the ability to increase the intensity of the nonconformance carte blanche so long as the property owners did not alter the building's interior dimensions. *See Brakke v. Iowa Dep't of Nat. Res.,* 897 N.W.2d 522, 537 (Iowa 2017) ("It is universally accepted that where statutory terms are ambiguous, courts should interpret the statute in a reasonable fashion to avoid absurd results."). Consequently, we agree with the ZBA and lower courts that section 29.307(2)(a)(ii)'s reference to section 29.307(2)(a)(i) incorporates section 29.307(2)(a)(i)'s prohibition on increases in the intensity of a nonconforming use. However, this does not end our analysis, as we must determine whether Ames 2304's proposed interior remodel constitutes an increase in intensity under section 29.307(2).

**C.  The Intensity of a Nonconforming Use.**  The City zoning code defines "intensity" as "the degree or level of concentration to which land is used for commercial, industrial or any other nonresidential purpose." Ames, Iowa, Municipal Code § 29.201(109) (2017).  Yet, the ordinance does not define "intensity" concerning residential purposes, which is how Ames 2304 uses its structure.[3]  According to Ames 2304, this renders "intensity" inapplicable to a residential use, so a residential use like Ames 2304's apartment building can never increase in intensity under the ordinance.

This reading of the zoning code is inappropriate for a couple reasons. First, the ordinance governing nonconforming uses refers to structures in general and does not distinguish between residential and nonresidential structures that are nonconforming.  *See* Ames, Iowa, Municipal Code § 29.307.  To apply Ames 2304's proposed interpretation, we would have to read a distinction into the ordinance that does not exist.  "[W]e may not read language into the [ordinance] that is not evident from the language the legislature has chosen." *Jahnke v. Deere & Co.*, 912 N.W.2d 136, 143 (Iowa 2018).  Second, this interpretation would create absurd results, as it would lead to virtually no regulation of nonconforming uses for residential purposes that could allow a property owner to expand his or her residential nonconforming use to include an unlimited number of bedrooms and residents so long as there are five or less unrelated persons living in each residential unit.  *See* Ames, Iowa, Municipal Code § 29.201(14)  ("Apartment dwellings may be occupied by families only, or by a group of unrelated persons limited to five or less per residential unit.");  *see also Brakke*, 897 N.W.2d at 534 ("[C]ourts should interpret the

---

[3]Ames 2304 is considered an apartment dwelling because it contains more than three residential units.  Ames, Iowa, Municipal Code § 29.201(14).  An apartment dwelling is considered residential under the City's zoning code if it has twelve units or less.  *Id.* § 29.702, tbl. 29.702(2) (2017).

statute in a reasonable fashion to avoid absurd results."). For these reasons, the ordinance's prohibition against increases in intensity of nonconforming uses is applicable to residential structures. Therefore, we must determine the definition of "intensity" in order to analyze whether Ames 2304's proposed interior remodel constitutes an increase in intensity under the ordinance.

Though section 29.307(2) does not define "intensity," our examination of section 29.307 as a whole gives us a clue as to the meaning of intensity concerning residential structures that operate as a nonconforming use. *See State v. Iowa Dist. Ct.*, 889 N.W.2d 467, 473 (Iowa 2017) (noting other parts of a statute may inform the court's resolution of a statutory ambiguity). Section 29.307(3)(c) governs the restoration of a damaged nonconforming structure and allows property owners to rebuild a nonconforming structure damaged by natural disaster to the extent of 70% or less of its assessed value, "*provided such rebuilding does not increase the intensity of use, as determined by the number of dwelling units (for residences).*" Ames, Iowa, Municipal Code § 29.307(3)(c) (emphasis added). Thus, section 29.307(3)(c) connects the intensity of a residential nonconforming use to the number of dwelling units, and we interpret section 29.307(2)(a)'s prohibition on increases in intensity to provide "intensity" with the same connection to the number of dwelling units. Since Ames 2304's proposed interior remodel does not increase the number of dwelling units in the structure, we affirm the decision of the court of appeals and reverse the district court judgment. There was not substantial evidence to support the ZBA's findings, and it was erroneous for the ZBA to deny Ames 2304's permit on the basis that the remodel would increase the intensity of the nonconforming use.

**IV. Conclusion.**

For the aforementioned reasons, we affirm the court of appeals decision, reverse the judgment of the district court, and remand to the district court for entry of an order sustaining the writ of certiorari.

**WRIT SUSTAINED.**

All justices concur except McDonald, J., who takes no part.